IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>CARL C. DREWRY, III,</td><td>*</td><td></td></tr>
<tr><td>    Plaintiff,</td><td>*</td><td></td></tr>
<tr><td>        v.</td><td>*</td><td>CIVIL NO.: WDQ-09-2340</td></tr>
<tr><td>DEPUTY SHERIFF S. STEVENSON,<br><i>et al.,</i></td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>    Defendants.</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
</table>

*     *     *     *     *     *     *     *     *     *     *     *     *

MEMORANDUM OPINION

Carl C. Drewry, III sued Deputy Sheriff Shane Stevenson, Sheriff Charles Jenkins, and the Board of County Commissioners of Frederick County for assault, battery, false imprisonment, false arrest, and violations of the U.S. Constitution and the Maryland Declaration of Rights. For the following reasons, Stevenson's motion for summary judgment will be granted in part, and denied in part.

I.  Background[1]

Carl Drewry is a nuclear engineer who worked in Gaithersburg, Maryland. Carl Drewry Dep. 18:3-5, May 24, 2010. He is married to Cheryl Drewry, who worked as a housekeeper for

---

[1]  On summary judgment, Drewry's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Anastasia Girard. *Id.* 23:2-3. Girard leased the Westwood House in Dickerson, Maryland, where she lived. *Id.* 60:25-61:6. She allowed the Drewrys to live there as her subtenants in exchange for Mrs. Drewry's housekeeping services and Mr. Drewry's help with property maintenance and repair. *Id.* 102:3-15, 68:10-20.

On May 7, 2008, Girard called Mr. Drewry's cell phone while he was at work and told him that he could no longer stay at the residence. *Id.* 65:2-9. That night, when Mr. Drewry returned from work, he told Girard that because of Maryland's "30-day notice requirements," he and his wife could not be forced to vacate the Westwood House immediately, and "would [instead] vacate by June 7th." *Id.* 65:20-66:3.

On May 8, 2008, Girard contacted Frederick County Emergency Communication and requested to speak with a police officer. Deputy Sheriff Shane Stevenson was dispatched to her residence. Shane Stevenson Dep. 59:4-6, June 4, 2010. Girard sought Stevenson's advice on removing Mr. Drewry from her property. *Id.* 64:21-65:5. Girard told Stevenson that "she live[d] in the house and she [was] allowed to have [Mrs. Drewry] live [there] to help [with] upkeep," but allowing Mr. Drewry to stay overnight violated her lease. *Id.* 65:4-9. She stated that when she learned that Mr. Drewry had been spending the night, she confronted him about it and "he got angry . . . and spent [the next] night there anyway, even though she had asked him to

leave." *Id.* 65:9-11. Stevenson told Girard that she had three options. She could: (1) mail Mr. Drewry a trespass letter explaining that he could not be on the property, (2) file for eviction if he actually lived on the property, or (3) obtain a "peace and protective order." *Id.* 65:18-66:2. Based on his conversation with Girard, Stevenson believed that Mr. Drewry was not her tenant. *Id.* 75:13-21.

Later that day, Girard called Frederick County Emergency Communication again because she wanted her options explained to Harry Grant, her boyfriend, who was now at the Westwood House. *Id.* 77:4-18. Stevenson was dispatched to the residence. Another officer asked if he "needed backup," but Stevenson declined because "Mr. Drewry was not on the scene." *Id.* 77:15-78:3.

Stevenson arrived at the house and explained the options to Girard and Grant on the front porch. *Id.* 79:7-11. Mrs. Drewry arrived while they were talking. *Id.* 79:10-11. Stevenson "explained to [Mrs. Drewry] that [Girard] didn't want her husband staying the night there and [Mrs. Drewry] stated she understood." *Id.* 79:14-17.

Around 6:30 p.m., Mr. Drewry arrived. Carl Drewry Dep. 61:20-62:1. Mrs. Drewry approached him while he was still in his car and "told him to be ready" and "just do whatever the officer said." Cheryl Drewry Dep. 41:14-15, May 24, 2010. Mr.

3

Drewry exited his car and went up the porch steps. *Id.* 41:23-24. Stevenson told him he needed to leave. *Id.* 41:24. Girard also told Drewry "either please leave or please go." Stevenson Dep. 81:17-18.

Mr. Drewry "started yelling that he had 30 days and that there was nothing anyone could do." Defs.' Mot. Summ. J., Ex. C. Stevenson told Mr. Drewry that Girard had asked him to leave and "he must leave or go to jail." *Id.* Mr. Drewry said "he didn't understand," and Stevenson explained "[i]f you don't leave you will be arrested." *Id.* Mr. Drewry did not voluntarily go. Carl Drewry Dep. 67:9-11. Instead, he asked "what for?" and approached the front door, which Girard had entered. *Id.* 69:22-23; Defs.' Mot. Summ. J., Ex. C.

Stevenson grabbed Mr. Drewry's "left arm [at the wrist], yanked it behind [his] back, threw [Mr. Drewry] against [a] pillar" and told him he was under arrest. Carl Drewry Dep. 70:17-20, 71:12-14; Defs.' Mot. Summ. J., Ex. C.[2] Mr. Drewry's left shoulder hit the pillar, and he was about a foot from the top of the stairs. Carl Drewry Dep. 72:20-21, 73:20-22. Mr. Drewry was positioned so that he faced the pillar. *Id.* 73:13-15.

---

[2] Stevenson believed that Drewry was "[t]respassing and [had] fail[ed] to obey a lawful order." Stevenson Dep. 94:10-95:3.

Stevenson states that Mr. Drewry "attempted to pull his hand away" and "attempted to kick me several times and did succeed [in doing] so. He attempted to push off when I was trying to control him, and continued to try to get his hands free." Stevenson Dep. 93:6-10. Mr. Drewry states that he did not attempt to pull away when Stevenson grabbed his hand: "there wasn't any time to pull [away] or anything. [Stevenson] slammed me against the pillar first . . . It was all done in one motion. The grabbing and throwing against the pillar was one continuous motion." Carl Drewry Dep. 74:7-11. Mr. Drewry states that he was against the pillar for "[m]aybe a second or two" before Stevenson "threw [him] down onto the floor . . . face first and shoulder first." *Id.* 75:15-17, 76:1-2.

Once on the porch floor, Stevenson pinned Mr. Drewry down using his knee or foot. *Id.* 76:13-16. While his face was "pushed against the floor," Drewry told Stevenson "I'll leave, okay;" this was "the first time that [he] agreed to leave." *Id.* 76:19-23. Mrs. Drewry was watching and "demand[ed] that [Stevenson] let [Mr. Drewry] up because he was hurting [him]." *Id.* 76:25-77:1.

Stevenson remained on top of Mr. Drewry and placed him in handcuffs. *Id.* 77:8-9. After he had been handcuffed, Stevenson "stood [Mr. Drewry] back up and threw [him] back down again." *Id.* 77:10-11. When Mr. Drewry was back on the floor, his wife

told Stevenson that he was diabetic and needed "to eat and have
. . . insulin." *Id*. 79:3-6. Stevenson picked up Mr. Drewry and
said he would call an EMT. *Id*. 79:6-7. About 20 to 30 minutes
later, an ambulance arrived. *Id*. 81:23-25.

In front of the ambulance, Stevenson "pulled both [of Mr.
Drewry's] arms as hard as he could" and "tightened the
handcuffs." *Id*. 83:18-20. The EMTs tested Mr. Drewry's blood
sugar, which was in "the high 160s," requiring "insulin to bring
it back to the 80 to 120 level." *Id*. 84:15-20. Mr. Drewry
states that this "was a situation that should be addressed."
*Id*. 85:1-3. The EMTs asked if he wanted to go the hospital, but
then "looked at Deputy Stevenson . . . to know what to do next;"
Stevenson said "we'll call it a refusal and I'll take him in for
booking." *Id*. 85:4-13.

At Central Booking, Mr. Drewry was instructed to remove his
belt and jacket. *Id*. 89:1-2. When he tried to do so, he
discovered that he "could not move [his] left arm." *Id*. 89:4-7.
One of the officers or staff at Central Booking had to help him.
*Id*. 89:4-7. Mr. Drewry "was very uncomfortable" and "yelled out
that [his arm] really hurt." *Id*. 89:6-7. A nurse looked at his
shoulder and arm and "decided . . . he need[ed] to go to the
hospital." *Id*. 89:24-90:1; Stevenson Dep. 88:19-89:4.

Mr. Drewry was taken to the hospital and seen by Dr. David
L. Kowalk, M.D., who determined that he had "a pretty badly

displaced fracture" in his shoulder and "a tremendous amount of swelling." David Kowalk Dep. 17:15-21, July 29, 2010. The fracture was "consistent with a fall" to Mr. Drewry's left shoulder, and was "more severe than [a] typical shoulder fracture." Kowalk Dep. 17:10-11, 19:18-25. Mr. Drewry missed a month of work because of his injury. Carl Drewry Dep. 30:19-21.

On October 8, 2008, Drewry sued Stevenson and Jenkins in the District Court of Maryland for Frederick County. ECF No. 2. On January 27, 2009, he amended his complaint by increasing the *ad damnum.* ECF No. 10. On February 24, 2009, the case was transferred to the Circuit Court for Frederick County, and on August 19, 2009, Drewry amended his complaint to add the County as a Defendant. ECF Nos. 15 & 23. The case was removed to this Court on September 4, 2009. ECF No. 1. On January 6, 2010, the claims against Jenkins and the County were dismissed. ECF No. 38. On September 13, 2010, Stevenson moved for summary judgment. ECF No. 48.

II.  Analysis

A.  Standard of Review

Under Rule 56(a), summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the

motion, "the judge's function is not . . . to weigh the evidence
and determine the truth of the matter but to determine whether
there is a genuine issue for trial." *Anderson v. Liberty Lobby,
Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact
is genuine "if the evidence is such that a reasonable jury could
return a verdict for the nonmoving party." *Id.* at 248.

The Court must "view the evidence in the light most
favorable to . . . the nonmovant, and draw all reasonable
inferences in h[is] favor," *Dennis v. Columbia Colleton Med.
Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but it also must
abide by the "affirmative obligation of the trial judge to
prevent factually unsupported claims and defenses from
proceeding to trial," *Bouchat v. Balt. Ravens Football Club,
Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal
quotation marks omitted).

B. Section 1983 Claims

Count VII of Mr. Drewry's amended complaint states claims
under 42 U.S.C. § 1983 for violations of the United States
Constitution based on (1) unlawful arrest, and (2) excessive
force. Stevenson argues that summary judgment should be granted
on these claims because: (1) the undisputed evidence is that Mr.
Drewry's arrest was supported by probable cause, (2) the force
used was objectively reasonable, and (3) he is entitled to
qualified immunity. Def.'s Mot. Summ. J. 21-32. The Court

first must determine if a constitutional right was violated, and if so, whether that right was clearly established at the time of the events at issue, or if qualified immunity protects Stevenson from suit. *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

> 1.  Unlawful Arrest

Unlawful arrest claims are analyzed under the Fourth Amendment, which protects against unreasonable searches and seizures. *See Brown v. Gilmore,* 278 F.3d 362, 367 (4th Cir. 2002). To demonstrate an unreasonable seizure under the Fourth Amendment, Mr. Drewry must show that Stevenson arrested him without probable cause. *Id.* Probable cause exists if "at the moment the arrest was made . . . the facts and circumstances within [the officers' knowledge] and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91 (1964)(citations omitted). Two factors govern: "the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Pritchett v. Alford,* 973 F.2d 307, 314 (4th Cir. 1992).

Mr. Drewry argues that Stevenson lacked probable cause to arrest him for trespass because Stevenson did not complete a more comprehensive investigation of Drewry's right to be present at Girard's residence. Pl.'s Opp'n 14. Had Stevenson done so,

he would have discovered that Mr. Drewry was not trespassing, but was a lawful tenant. *Id.* Stevenson contends that the extent of his investigation was sufficient. Def.'s Reply 4-6.

"When probable cause has been gained from a reasonably credible victim or eyewitness, there is no constitutional duty to investigate further." *Pasiewicz v. Lake Cnty. Forest Preserve Dist.,* 207 F.3d 520, 524 (7th Cir. 2001). "[T]here is no set requirement that all tips be corroborated by subsequent police investigation in order to be considered credible." *United States v. Perez,* 393 F.3d 457, 462 (4th Cir. 2004).

Here, it is undisputed that Girard told Stevenson she leased the Westwood House, and that Mr. Drewry's presence at the property violated her lease. Stevenson Dep. 65:9-11, 75:13-21. Girard explained to Stevenson on two separate occasions that she needed to remove Mr. Drewry from the property, and he had refused her request to leave. *Id.* 77:4-18. When Stevenson explained the situation to Mrs. Drewry, she did not object or explain that her husband was a tenant; instead, Mrs. Drewry stated that she understood, and when Mr. Drewry arrived she told him to "do whatever the officer said." Cheryl Drewry Dep. 41:14-15, May 24, 2010.

Further, Mr. Drewry does not contest that on the evening of May 8, 2008, Girard and Stevenson both told him to leave the property and he did not voluntarily go. Carl Drewry Dep. 67:9-

10

11.  Under Maryland's wanton trespass statute, "[a] person may not remain on [the] private property . . . of another, after having been notified by the owner or the owner's agent not to do so."  Md. Code. Ann., Criminal Law Article § 6-403 (b).  No reasonable fact finder could conclude that Mr. Drewry's arrest was not supported by probable cause to believe he was trespassing.[3]  Accordingly, Stevenson will be granted summary judgment on Mr. Drewry's unlawful arrest claim.

> 2.  Excessive Force

Claims alleging the use of excessive force during an arrest are also analyzed under the Fourth Amendment.  *Waller v. City of Danville,* 212 Fed. Appx. 162, 169 (4th Cir. 2006).  "An officer's actions are not excessive if they 'are objectively reasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation."  *Id.* (*quoting Graham v. Connor,* 490 U.S. 386, 397 (1989)) (alterations in original).  "Because 'police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving,' the facts must be evaluated from the perspective of a reasonable officer on the scene, and the use of hindsight must be avoided."  *Waterman v.*

---

[3]  *See United States v. Hughes,* 172 F.3d 864 (4th Cir. 1999) (officers had probable cause to arrest suspect for trespass when they recognized him at apartment building after being informed by the owner that he was not allowed on premises following his drug conviction).

*Batton,* 393 F.3d 471, 476-77 (4th Cir. 2005) (*quoting Graham,*
490 U.S. at 397)).

Determining reasonableness "requires a careful balancing of
the nature and quality of the intrusion on the individual's
Fourth Amendment interests against the countervailing
governmental interests at stake." *Graham,* 490 U.S. at 396
(internal quotation marks omitted). The "facts and
circumstance of each particular case" must be examined, and
consideration should be given to: (1) "the severity of the crime
at issue," (2) "whether the suspect pose[d] an immediate threat
to the safety of the officer or others," and (3) "whether he
[was] actively resisting arrest or attempting to evade arrest by
flight." *Id.* The ultimate question is "whether the totality of
the circumstances justified [the] particular . . . seizure."
*Id.*

Although Drewry's trespass was not a particularly serious
crime, Fourth Circuit precedent emphasizes the existence of
criminal activity rather than the extent of harm it caused.[4]
Further, a reasonable officer could have concluded that Mr.
Drewry posed a threat to Girard. It is undisputed that Girard
and Stevenson told Mr. Drewry to leave her property, he refused,

---

[4] *See, e.g., Wilson v. Flynn,* 429 F.3d 465, 468 (4th Cir. 2005)
(even though arrestee had caused no physical harm, the first
*Graham* factor favored the officer because the assault for which
he was arrested "constituted criminal activity").

and began to follow Girard into the house.  Carl Drewry Dep.
69:22-23.

However, the parties dispute whether Mr. Drewry attempted
to resist arrest when Stevenson grabbed his arm to stop him from
entering the home.  According to Stevenson, Mr. Drewry
"attempted to pull . . . away" and tried to kick Stevenson.
Stevenson Dep. 93:6-10.  Mr. Drewry says that he did not resist
or try to kick Stevenson, but Stevenson grabbed and threw him
against the pillar in "one continuous motion."  Carl Drewry Dep.
74:7-11.  Mr. Drewry also states that immediately after throwing
him against the pillar, Stevenson pushed him face first into the
ground, pinned him down, and handcuffed him.  *Id.* 75:15-76:12.
Mr. Drewry said "I'll leave" and Stevenson then picked him up
and threw him into the ground a second time, fracturing his
shoulder.  *Id.* 76:19-26, 77:10-11.

Viewing the facts in the light most favorable to Mr.
Drewry, a reasonable jury could conclude that Stevenson acted
unreasonably when he picked Mr. Drewry up and threw him to the
ground a second time when Mr. Drewry was handcuffed and no
longer a threat.[5]  The severity of Mr. Drewry's shoulder fracture

---

[5]  *See, e.g., Bailey v. Kennedy,* 349 F.3d 731, 745 (4th Cir.
2003)(force used was not reasonable when applied to secured
suspect); *Kane v. Hargis,* 987 F.2d 1005, 1008 (4th Cir. 1993)
(reasonable jury could conclude force was excessive when officer
"repeatedly pushed [plaintiff's] face into the pavement,"

would also support a finding that Stevenson's use of force was excessive.[6]

### 3. Qualified Immunity

Qualified immunity protects government officials from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). It gives an "immunity from suit rather than a mere defense to liability" and "is effectively lost if a case is erroneously permitted to go to trial." *Pearson v. Callahan,* 555 U.S. 223, 129 S. Ct. 808, 815 (2009) (*quoting Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). However, "granting summary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants." *Rainey v. Conerly,* 973 F.2d 321, 324 (4th Cir. 1992).

---

cracking her teeth and bruising her face after she had been secured).

[6] *See Jones v. Buchanan,* 325 F.3d 520, 531 (4th Cir. 2003)("the severity of Jones's injuries provides still another ground for distinguishing this case from those in which we . . . have held that a plaintiff has not established an excessive force claim."); *Rowland v. Perry,* 41 F.3d 167, 174 (4th Cir. 1994) (summary judgment was properly denied in excessive force case when the officer inflicted "serious leg injury" on the plaintiff who had committed a misdemeanor).

"It is clearly established that citizens have a Fourth Amendment right to be free from unreasonable seizures accomplished by excessive force." *Waterman,* 393 F.3d at 476. Thus, to determine if Stevenson is entitled to qualified immunity, it must be decided whether a reasonable jury could conclude that he knew or should have known that his actions were excessive. *See Valladares v. Cordero,* 552 F.3d 384, 388 (4th Cir. 2009).

"[C]ourts have consistently held that officers using unnecessary [or] gratuitous . . . force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity." *Bailey v. Kennedy,* 349 F.3d 731, 744-45 (4th Cir. 2003). The genuine factual dispute about whether Stevenson picked Mr. Drewry up and threw him to the ground after he had been secured precludes summary judgment on qualified immunity grounds.[7] Stevenson's motion will be denied on the § 1983 excessive force claim.

C.    Maryland Declaration of Rights Claim

Article 26 of the Maryland Declaration of Rights "protects the right to be free from unreasonable searches and seizures." *Dent v. Montgomery Cnty. Police Dep't,* --- F. Supp. 2d ---, 2010

---

[7] *See Bailey,* 349 F.3d at 745 ("It was especially clear that [the officers] were not entitled to use force after [the suspect] was secured face down on the floor in handcuffs.").

WL 3719932, at *11 (D. Md. Sept. 17, 2010). Count VI of Mr. Drewy's amended complaint states claims for violations of Article 26 based on unlawful arrest and excessive force.

Article 26 "is *in pari materia* with the Fourth Amendment." *Richardson v. McGriff,* 361 Md. 437, 452-53 (2000). Courts "construe [it] in conformance with constructions given to the Fourth Amendment by the Supreme Court." *Scott v. State,* 366 Md. 121, 139 n. 2 (2001). Accordingly, as summary judgment will be granted on Mr. Drewry's claim that his arrest was unlawful under the Fourth Amendment, it must then be granted on his Article 26 claim. And, as summary judgment will be denied on Mr. Drewry's Fourth Amendment excessive force claim, it must be denied on his Article 26 excessive force claim.[8]

D.   Maryland Tort Claims

Counts I-IV state claims under Maryland law for assault, battery, false arrest, and false imprisonment. Stevenson argues that he should be granted summary judgment on these claims because: (1) Mr. Drewry's arrest was justified, and (2) he is immune under the Maryland Tort Claims Act ("MTCA").[9]   Def.'s Mot.

---

[8]   *See, e.g., Mazuz v. Maryland,* 442 F.3d 217, 231 (4th Cir. 2006) ("Although, theoretically, the resolution of claims under the Fourth Amendment and Article 26 can differ . . . we discern no basis in this record or under Maryland law to support a different construction of these provisions.").

[9]   Md. Code. Ann., State Gov't §§ 12-101, *et seq.*

Summ. J. 37-39.  Drewry contends that because Stevenson acted with malice he is not entitled to immunity.  Pl.'s Opp'n 14.

1.  Immunity

Under the MTCA, statutory immunity applies to "Maryland state personnel who commit a 'tortious act or omission . . . within the scope of the[ir] public duties,' provided the act or omission 'is made without malice or gross negligence.'"  *Henry v. Purnell,* 619 F.3d 323, 342 (4th Cir. 2010) (alterations in original) (*quoting Okwa v. Harper,* 360 Md. 161, 757 A.2d 118, 128 (2000)).  Thus, Stevenson has no immunity for malicious conduct.  *Shoemaker v. Smith,* 353 Md. 143, 158 (1999).

For determining statutory immunity under Maryland law, malice "embodies the very subjective element discarded by the Supreme Court for purposes of § 1983"; it requires "actual malice," meaning the plaintiff must show that the state employee performed an act "without legal justification or excuse" and "with an evil or rancorous motive . . . the purpose being to deliberately and willfully injure the plaintiff."  *Id*. at 162-64 (internal citations and quotation marks omitted).

Malice is "seldom admitted" and must "often[] [be] inferred from acts and circumstantial evidence."  *Newell v. Runnels,* 407 Md. 578, 637 (2009) (*quoting Henderson v. Md. Nat'l Bank,* 278 Md. 514, 520 (1976)).  To survive summary judgment, "the plaintiff must point to specific evidence that raises an

17

inference that the defendant's actions were improperly motivated." *Ford v. Baltimore City Sheriff's Office,* 149 Md. App. 107, 125 (Md. Ct. Spec. App. 2002) (*quoting Thacker v. City of Hyattsville,* 135 Md. App. 268, 301 (Md. Ct. Spec. App. 2000)). Malice may be found "even if a state employee's actions were objectively reasonable." *Sykes v. Wicomico Cnty.,* 2007 WL 1073607, at *8 (D. Md. Mar. 30, 2007).

Mr. Drewry's deposition testimony is that Stevenson slammed him into a pillar; he was immediately thrown to the ground face first because he asked why he was being arrested and had not quickly left. Carl Drewry Dep. 74:7-11. When Mr. Drewry was on the ground, Stevenson pinned him down with his knee, handcuffed him, and threw him to the ground a second time. *Id.* 76:13-16, 77:10-11.[10] Mr. Drewry also testified that 20-30 minutes after he had been arrested, Stevenson "pulled both [of Mr. Drewry's] arms as hard as he could" and told EMTs to deny Mr. Drewry medical treatment, despite knowing that he was diabetic and had elevated blood sugar. *Id.* 83:19-20, 85:4-13. A reasonable jury could infer Stevenson's malice from Mr. Drewry's testimony.[11]

---

[10] *See Sykes,* 2007 WL at *9 ("jumping on Sykes's back, continuously striking him, and forcing Sykes to go face forward into the pavement could constitute the malice necessary to defeat immunity, especially given that Sykes contends he gave the police no cause to use force.").

[11] *Compare Okwa,* 360 Md. at 172-73 & 81 (reasonable jury could find malice when arrestee's version of events was that officers

18

Stevenson will not be granted summary judgment on the state tort claims because of immunity.

### 2. Probable Cause to Arrest

Stevenson argues that, even without immunity, he should be granted summary judgment on Mr. Drewry's state tort claims because there was probable cause for Mr. Drewry's arrest and "false imprisonment, false arrest, and assault and battery can only occur when there is no legal authority or justification for the arresting officer's actions." Pl.'s Mot. Summ. J. 40.

### i. Assault & Battery Claims

Stevenson argues that police officers are not liable for assault or battery during an arrest—regardless of the amount of the force used—if there was probable cause for the arrest. However, assault and battery may occur—despite "legal authority or justification" for an arrest—if "the force used is . . . excessive." *Williams v. Prince George's Cnty.,* 112 Md. App. 526, 554 (Md. Ct. Spec. App. 1996) (*citing Ashton v. Brown,* 339 Md. 70, 119 (1995)). Because Mr. Drewry has presented a genuine

---

forced him to the ground, struck his head because he "fail[ed] to obey immediately" and "roughly dragged" and pushed him to the ground after he was handcuffed) *with Ford v. Baltimore City Sheriff's Office,* 149 Md. App. 107, 126 (Md. Ct. Spec. App. 2002)(harsh language alone was insufficient to show malice).

dispute about whether Stevenson used excessive force, summary judgment on the assault and battery claims will be denied.

### ii. False Arrest & False Imprisonment

Under Maryland law, "[t]he elements of false arrest and false imprisonment are identical." *Heron v. Strader,* 361 Md. 258, 264 (2000). They are: (1) "the deprivation of the liberty of another," (2) "without consent," and (3) "without legal justification." *Id.* Legal justification is "judged by the principles applicable to the law of arrest," and when "the basis of a false imprisonment action is an arrest by a police officer, the liability of the police officer . . . depend[s] upon whether or not the officer acted within his legal authority to arrest." *Montgomery Ward v. Wilson,* 339 Md. 701, 721 (1995).

Maryland law provides that a police officer may arrest a suspect without a warrant if he has probable cause to believe the suspect has "commit[ed] or attempt[ed] to commit a felony or misdemeanor in [his] presence." Md. Code Ann., Crim. Proc. § 2-201). Mr. Drewry has presented no evidence that Stevenson lacked probable cause for the trespass arrest. Accordingly, Stevenson will be granted summary judgment on the false arrest and false imprisonment claims.[12]

---

[12]   *Hayes v. City of Seat Pleasant,* 2010 WL 3703291, at *9 (D. Md. Sept. 16, 2010) (granting officer summary judgment on false imprisonment claim because he had probable cause to believe plaintiff committed misdemeanors in his presence).

III.   Conclusion

For the reasons stated above, Stevenson's motion for summary judgment will be granted in part, and denied in part.


March 30, 2011                    _____/s/_____
Date                             William D. Quarles, Jr.
                                 United States District Judge